# EXHIBIT A





IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE
JUL 15 2011
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

CHUNTA WARTHEN,
PLAINTIFF

Vs.

CIVIL ACTION
FILE NO: 2011 - CV - 203253

LITTON LOAN SERVICING LP;
AMERICA'S WHOLESALE LENDER;
COUNTRYWIDE HOME LOANS INC;
MORTGAGE ELECTRONIC REGISTRATION
SYESTEMS;
THEBANK OF NEW YORK MELLON f/k/a THE
BANK OF NEW YORK as TRUSTEE for the
CERTIFICATEHOLDERS CWABS, INC.
ASSET –BACKED CERTIFICATES, SERIES
2005-08 and
JOHN DOE attorneys for The Bank of Mellon,
DEFENDANTS.

## VERIFIED
## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

NOW COMES ,Chunta Warthen (hereinafter referred to as 'Plaintiff'), by and through
undersigned counsel and hereby files her complaint against Defendants, inclusive, and
complain and allege as follows:

### COUNT I.
### THE ACTION

1.) Plaintiff files her Complaint against Defendants inclusive, jointly and severally and
states as the basis for her complaint the following:
      (a) institution of wrongful non-judicial foreclosure;
      (b) threatened conversion of personal property and real property;
      (c) intentional infliction of emotional distress, of Plaintiff;
      (d) reimbursement of all costs paid by Plaintiff to bring this action against
Defendants for instituting wrongful non-judicial foreclosure proceedings;
      (e) quiet title;
      (f) statutory and actual damage;
      (f) equitable relief;
      (g) punitive damages for tortious acts; and
      (h) for reasonable attorney fees.
2.) All claims amount to a serious breach of Defendants' statutory duty, and obligation
to …' fairly use the power of sale'… in a deed to secure a debt, which breach directly

1

resulted in Plaintiff being threatened with being dispossessed without proper statutory notice, and further denying Plaintiff an opportunity to cure the arrearage on her mortgage.

3.) Plaintiff seeks damages and equitable relief for misrepresentation and deceit, during Defendant's non-judicial foreclosure process and by initiating an illegal and wrongful non-judicial foreclosure proceeding against Plaintiff and her family. All such Georgia claims are properly asserted under this Court's jurisdiction.

4.) Defendant John Doe, attorney is legal counsel who assisted Defendants in filing their Assignments or Trustee Assignments, and pursuing wrongful non-judicial foreclosure, and who may have assisted in the securitization process. Each of the John Doe attorneys at this time remain unknown until Plaintiff conducts discovery. Plaintiff will amend her complaint once the true and accurate names of all Defendants are known, and as soon as they can accurately be determined.

5.) The acts and/or allegations of acts committed by the Defendants and Defendant corporations were committed through its officers, directors, employees, agents, and/or representatives acting within the scope of their authority, or ostensibly within the scope of their authority.

6.) Upon information and belief, Plaintiff alleges that at all times material hereto, that the unknown Defendants were attorneys, agents, partners, servants, and/or employees of unnamed co-Defendants and were acting within the scope of their authority.

## SUBJECT PROPERTY

7.) This is an action concerning the non-judicial foreclosure on real property ("Subject Property") lying and being in Newton County, Georgia being described as follows:

**All that tract of parcel of land, with house and all other improvements located thereon, lying and being in Land Lot 139 of the 10th District of Newton County, Georgia, being Lot 70 of Lyndhurst Subdivision, Unit Two as shown on plat of Lyndhurst Subdivision-Unit Two as same recorded in Plat Book 35, page 60, Newton County Records. The description of said property as continued on said plat is hereby incorporated herein and made an essential part hereof by reference.**

(See attached Warranty Deed Exhibit "A" recorded in Newton County Records at Book: 1933 Page 218-219)

## COUNT II.
## PARTIES

8.) Plaintiff Chunta Warthen is a natural person as that term is defined under 15 U.S.C. § 1602(h), and is a citizen presently domiciled in Georgia, and is the legal owner of a principal dwelling commonly known as: 35 Fox Glove Drive, Covington, GA 30016, Newton County, (described above as the "Subject Property", which property was purportedly secured by a Security Deed executed on or about June 3, 2005, and recorded in Newton County, Georgia records at Book: 1933; and Page: 220-239 (See attached

Exhibit "B".)  The Security Deed was executed in favor of MERS or Mortgage
Electronic Registration Systems, Inc.

9.)  Defendant Litton Loan Servicing LP., ("Litton") is a Foreign Corporation registered
with the Georgia Secretary of State; upon information and belief "Litton" can be served
through, Corporation Service Company at: 40 Technology Pkwy South, #300 Norcross,
GA 30092, Gwinnett County, upon proper service, "Litton" is subject to the jurisdiction
of this Court

10 )  Defendant America's Wholesale Lender, ("AMERICAS") is a Foreign Corporation
not registered with the Georgia Secretary of State doing business in the State of Georgia;
upon information and belief, "AMERICAS" can be served through Secretary of State for
the State Georgia, Brian P. Kemp at 315 West Tower, #2 Martin Luther King , Jr. Drive,
Atlanta, Georgia 30334, Fulton County.  Upon service, "AMERICAS" is subject to the
jurisdiction of this Court.

11.)  Defendant Mortgage Electronic Registration Systems ("MERS"), is a Foreign
Corporation that is not registered with the Secretary of State for Georgia but is doing
businesses in the State of Georgia, upon information and belief MERS can be served
through the Secretary of State for the State Georgia, Brian P. Kemp at 315 West Tower,
#2 Martin Luther King , Jr. Drive, Atlanta, Georgia 30334, Fulton County.  Upon service,
"MERS" is subject to the jurisdiction of this court.

12.)  The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the
Certificate holders CWABS, Inc. Asset-Backed Certificates, Series 2005-08 is a foreign
corporation not registered in the state of Georgia but is doing businesses in Georgia.
Upon information and belief  "MELLON" can be served through The Secretary of State
for the State Georgia, Brian P. Kemp at 315 West Tower, #2 Martin Luther King , Jr.
Drive, Atlanta, Georgia 30334.  Upon service, "Mellon" is subject to the jurisdiction of
this court.

13.)  Upon information and belief, Defendant John Doe, attorney, is a natural person, and
personally responsible for the error, malfeasance, misrepresentation, and their conspiracy
for their unlawful actions and is a resident of the State of Georgia, with offices in Atlanta,
and therefore subject to the jurisdiction of this Court.

14.)  Each Defendant knew or should have known that Defendants collectively violated
their statutory duty owed to Plaintiff by filing to …'exercise fairly the power of sale'.
Each Defendant encouraged and/or directed and/or assisted the other Defendants in
unlawful conduct.

15.)  A Notice of Lis Pendens is being filed contemporaneously with this petition in
Newton County, Georgia.

## COUNT III.
## JURISDICTION AND VENUE

16.)Venue is proper as is Jurisdiction as to all Defendants. GA CONST Art. 6 sec. 2
paragraph 2, 3 and Art. 6 sec 4 paragraph 1.

17.)  Plaintiff is a resident of Georgia, and one or more of the Defendants conduct
business and, or maintain offices within the state of Georgia.

18.)  Counts arising under contract, common law, and the law of conveyances in real

property are properly asserted under this Court's original and exclusive jurisdiction.
19.) Venue is proper in Fulton County Georgia, because one or more of the Defendant's maintain an office in this county. The real property and a substantial part of the events and claims (the specific subject of this suit) are situated within the state of Georgia.
20.) The original mortgage documents were signed in the state of Georgia, communications and the failure of those communications and all Notices notifying Plaintiff of potential default on her mortgage, were in the state of Georgia, predominantly all actions and all witnesses to those actions reside in either Fulton County, or the state of Georgia, Defendants and Defendant's agents all do business in the State of Georgia.

## COUNT IV.
## CONDITIONS PRECEDENT

21.) All conditions precedent have been performed or have occurred.
22.) Plaintiff is the individual damaged by the actions of the Defendants, their agents or partners, servants, and/or employees.

## COUNT V.
## SPECIFIC ALLEGATIONS

23.) On June 3, 2005, Plaintiff "Warthen" purportedly entered into a Security Deed or mortgage contact with Americas Wholesale Lender (AWL) in the amount of $449,500.00 while simultaneously and purportedly executing an Adjustable Rate Promissory Note with Countrywide Home loans (CWHL) on the same date and same property and for the same amount.
24.) The Security Deed on the purported first mortgage was assigned to MERS, which assignment immediately split the security interests, and allegedly placed the Security Deed in the capable hands of MERS as a Nominee for the Lender.
25.) The original Security Deed and assignment which purports to place the Security Deed in MERS was recorded in Newton County on September 23, 2009, at Book 2757, Page 353-353; *fully four years, four months and several days AFTER the closing transaction.* (See attached Exhibit "C")
25.) Defendants MERS, Americas Whole Sale Lender, and their attorneys have clouded the title to Plaintiffs property with an Assignment document that did not vest **MERS with an ownership interest in the alleged Promissory Note nor did MERS ever have an interest in the Promissory Note. Further, the original Security Deed did not vest MERS with an ownership interest in the Security Deed, thus the ability of any subsequent party to foreclose on a MERS Security Deed is eviscerated and now defective.**
26.) **The subsequent** MERS assignment was conducted by a fraudulent "robo signer" to wit: 'Marti Noriega' and 'Denise Bailey'. The Assignment of the Security Deed to The Bank of New York Mellon f/k/a/ The Bank of New York as Trustee for the Certificate Holders CWABS, Inc., Asset Backed Certificates, Series 2005-08, was signed by *Marti Noriega*, and *Denise Bailey* as Assistant Vice President and Assistant Secretary, respectively for MERS. This was notarized in Harris County, Texas by a known non-judicial foreclosure mill which employed unsavory individuals to "doctor" or "forge"

4

loan assignments.

27.) Plaintiff contends 'Marti Noriega' and 'Denise Bailey' were never employees of MERS, that neither had any personal knowledge of the document they were signing and acknowledging as a true and accurate Assignment of a real property interest, that neither were in fact employed by MERS, but rather by another entity, and that there has been a break in the chain of title because these persons lacked actual capacity to execute the document, actual ownership interest in the Security Deed, and thus could not have the actual authority to transfer a property interest consistent with the laws of Texas, or Georgia where the Assignment was ultimately filed.

28.) Defendant's attorneys have threatened a non-judicial foreclosure sale, and rely upon a fraudulent "robo signed" Assignment of the Security Deed, but lack legal standing to maintain such action due to the defects in their assignment.

29.) The Assignor of the Assignment, Marti Noriega has no authority and has signed the document in a fraudulent capacity, thereby creating a defect in the title to this property.

30.) On information and belief, Defendants by and through their agents are now seeking a wrongful non-judicial foreclosure, but lack legal standing to maintain such action against the Plaintiff.

31.) Through misconduct, errors, malfeasance, misrepresentations, and its conspiracy to commit unlawful actions, using policies, practices and procedures which failed to prevent initiation of a non-judicial foreclosure on the subject property by using fabricated real property transfer documents, Defendants are misrepresenting to Plaintiff the actual status of her loan, the foreclosure documents, the basis on which the foreclosure is being pursued, and the time line in which she was operating to pay her loan current.

32.) Plaintiff did not uncover the true facts and extent of deceit involved in her dealings with her lender, until recently, and has been advised in writing that the Defendant The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificate holders CWABS, Inc. Asset-Backed Certificates, Series 2005-08 is the true 'holder' and has standing to bring an action for non-judicial foreclosure as against the Plaintiff.

33.) Defendants withheld material information concerning the status of Plaintiff's mortgage.

WHEREFORE, Plaintiff prays for Judgment as set forth below.

## COUNT I.
## WRONGFUL NON-JUDICIAL FORECLOSURE
### (Against all Defendants)

34.) Plaintiff incorporates paragraphs 1-33 set forth above as if fully stated herein.

35.) As a result of Defendant's errors, malfeasance, misrepresentations, and its conspiracy in committing unlawful actions, using policies, practices and procedures, and a non-judicial foreclosure, Plaintiff is entitled to damages for instituting an improper wrongful non-judicial foreclosure.

36.) Because Plaintiff did not receive proper Notice of Default, nor proper Notice of Non-judicial foreclosure from the 'secured party' as required by state statute pursuant to OCGA § 44-14-162, damages equal to the value of the property for the improper conduct are now warranted.

WHEREFORE, Plaintiff prays for Judgment as set forth below.

## COUNT II
### UNCONSCIONABILITY – UCC-2-3202
### (Against all Defendants)

37.) Plaintiff re-alleges and incorporates by reference paragraphs 1-33 as though fully set forth herein.

38.) If the court as a matter of law finds the Security Deed, Promissory Note, or any clause of these alleged contracts, to have been unconscionable at the time made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

39.) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

40.) Here, based on the deception, the filing of an Assignment purportedly transferring an interest in real property that in fact is fraudulent, the unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were required to follow; coupled with the windfall that the Defendants may reap financially from their predatory practices upon Plaintiff, the court may find that the loan agreement, PROMISSORY NOTE and SECURITY DEED are unconscionable and of no force or effect.

41.) Specifically, Defendant's attorneys and agents processed, ratified, and serviced this transaction, yet utterly failed to provide proper statutory Notice of Default, and proper Notice of Non-judicial foreclosure Sale by a 'secured creditor', and failed to properly comply with substantive laws regarding non-judicial foreclosure sales in the state of Georgia. (see OCGA § 23-2-114, 286.)

42.) Said misrepresentations and failure to make accurate representations were made knowingly, or with reason to know, that Plaintiff would rely thereon.

43.) Under the totality of the circumstances, the Defendants' lies, fraud, and misconduct was unlawful, willful, wanton, intentional, and with a callous and reckless disregard of the statutory rights of the Plaintiff, justifying an award of not only actual compensatory damages, but also exemplary punitive damages to serve as a deterrent not only as to future conduct of the named Defendants herein, but also to other persons, or entities with similar inclinations.

44.) Plaintiff was damaged by Defendant's filing of a fraudulent Assignment of a real property interest, and thereby fraud, misconduct and unlawful actions and suffered a substantial ascertainable loss.

45.) Plaintiff seeks recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of her action.

WHEREFORE, Plaintiff prays for Judgment as set forth below.

## COUNT III.
## GEORGIA RESIDENTIAL MORTGAGE VIOLATIONS
### (Against all Defendants)

46.) Plaintiff re-alleges and incorporates by reference paragraphs 1-33 as though fully set forth herein.

47.) Georgia Residential Mortgage Act, O.C.G.A. §7-1-1000 et seq. provides as follows in section 1013 that a licensed mortgage professional shall not:

'(6) Engage in any transaction, practice, or course of business which is not in good faith or fair dealing, or which operates a fraud upon any person, in connection with the attempted or actual making of, purchase of, or sale of any mortgage loan;'

48.) Defendants knew or should have known that their agents process multiple non-judicial foreclosure sales each and every month, thereby creating a very high-risk of possible error in the processing of such non-judicial foreclosure sales.

49.) Beginning on the dates indicated and at all times material herein, Defendants assert that they are a 'secured creditor', and thus set in motion a Notice of Default and Notice of Non-judicial foreclosure Sale that was statutorily required to comply with  OCGA § 44-14-162.2. Sales Made On Non-judicial foreclosure Under Power Of Sale -- Mailing Of Notice To Debtor -- Procedure For Mailing Notice. (a) Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be **given to the debtor by the secured creditor** no later than 30 days before the date of the proposed non-judicial foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the **secured creditor**. (emphasis added)  And further: OCGA § 44-14-49. Right of **holder of mortgages to foreclose** in equity The **holder of any mortgage** of real or personal property or both, whether as original mortgagee or as executor, administrator, or assignee of the original mortgagee, may foreclose the mortgage in equity according to the practice of the courts in equitable proceedings as well as by the methods prescribed in this chapter. (emphasis added)

50.) Defendants purposely lied, intentionally misled and concealed material facts from Plaintiff throughout the mortgage non-judicial foreclosure process from initial contact through and during the final stages when her mortgage was being foreclosed upon by Defendants, by failing to be a statutorily defined 'secured creditor'.

51.) The non-judicial foreclosure transaction was not conducted in good faith, nor was Defendant acting fairly, or dealing fairly with candor regarding the Plaintiff and the initiation of non-judicial foreclosure proceedings upon Plaintiff's property.

52.) Defendant by their actions have through a course of conduct created and induced confusion of source, sponsorship of services, and legal rights of Plaintiff, and through their actions have committed actual fraud upon Plaintiff by filing a false Assignment of a real property interest and then initiating a non-judicial foreclosure upon the strength and represented accuracy of the Assignment.

53.) These violations are and were a matter of Defendant's policy, and procedure and

7

constitute unlawful corporate behavior.

54.) Defendants, through their collective willful actions fraud, deceit and concealment have violated the Georgia Residential Mortgage Act.

55.) Nothing in said GMRA "limits any statutory or common law right of any person to bring any action in any court for any act involved in the mortgage business or the right of the state to punish any person for any violation of any law" O.C.G.A. §7-1-1020.

WHEREFORE, Plaintiff seeks a judgment as outlined below.

## COUNT IV.
## PUNITIVE DAMAGES

56.) Plaintiff re-alleges and incorporates by reference paragraphs 1-33 as though fully set forth herein.

57.) Defendants' acts of fraud are intentional torts and Defendants' took advantage of Plaintiffs' lack of knowledge of the mortgage industry, lack of knowledge of the true facts about how a non-judicial foreclosure operates and the correct procedures.

58.) As a consumer, Plaintiff justifiably relied on Defendant's attorneys and Agents who processed, ratified, and serviced this transaction, yet utterly failed to provide proper statutory Notice of Default, and Notice of Non-judicial foreclosure Sale by a statutorily required 'secured creditor', and failed to properly comply with substantive laws regarding non-judicial foreclosure sales in the state of Georgia. (see OCGA § 23-2-114, 286.)

59.) Defendants took advantage of the Plaintiff and through their lies, concealments, misrepresentations and deception have initiated non-judicial foreclosure upon Plaintiff's property improperly.

60.) Plaintiff has been damaged by Defendants.

61.) Defendants' actions throughout this non-judicial foreclosure transaction were willful, malicious, and were done with intent, fraud, wantonness, oppression, and/or with complete disregard or want of care, which would raise the presumption of conscious indifference to consequences.

62.) Defendant should be punished and deterred from such predatory behavior under O.C. G. A. § 51-12-5.1.

WHEREFORE, Plaintiff prays for Judgment set forth below.

## COUNT V.
## FAILURE TO FOLLOW O.C.G.A. 11-9-312(b), 11-9-313; POSSESSION BY DELIVERY 11-9-314; PERFECTION BY CONTROL 11-9-104, 11-9-105 or 11-9-107.
## (Against MERS, Litton Loan Servicing LLP, Americas Wholesale Lender, and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificate holders CWABS, Inc. Asset-Backed Certificates, Series 2005-08)

63.) Plaintiff re-alleges and incorporates by reference paragraphs 1-33 as though fully set forth herein.

64.) Defendant lacks authority or standing to foreclose as they are not a 'secured creditor' and have failed to follow multiple statutes in Georgia.

65.) Defendants nor its agent is a 'secured creditor' in that they failed to obtain the 'Promissory Note' *and the purported Security Deed* by utilizing a defective and void or voidable Assignment from Defendant MERS.

66.) Defendant MERS did not have possession, delivery or control of any collateral, proceeds, ownership rights or original loan documents or accounts under O.C.G.A. 11-9-312(b), 11-9-313 possession by delivery, 11-9-314 perfection by control under 11-9-104, 11-9-105 or 11-9-107.

66.)  The above subject property or collateral and proceeds were sold by LITTON or AMERICA'S into a Mortgage Backed Securities under a Pooling and Servicing Agreement, in which the they relinquished all rights, titles, interest as well as ownership of payments to the subject real estate, and thus sold their real estate 'rights' under O.C.G.A. 11-9-318(a) which states:    (a) Seller retains no interest. A debtor that has sold an account, chattel paper, payment intangible, or promissory note does not retain a legal or equitable interest in the collateral sold.

67.)  MERS without an ownership interest in the alleged Promissory Note, nor an ownership interest in the original Security Deed, it was never vested with an ownership interest in real property; thus the ability of any subsequent party or assignee to foreclose on a MERS Security Deed which they have fraudulently 'assigned' is eviscerated and now defective.

68.)  Because the subsequent MERS assignment was conducted by a fraudulent "robo signer" to wit: 'Marti Noriega' and 'Denise Bailey'.  The Assignment of the Security Deed to The Bank of New York Mellon f/k/a/ The Bank of New York as Trustee for the Certificate Holders CWABS, Inc., Asset Backed Certificates, Series 2005-08 is a fraud and has no effect or force.

69.)  Defendants are trying to enforce an interest in real property without an effective present right of ownership.

70.) Defendants are not then 'holders in due course' of any instrument which would give them the entitlement of enforcement as required by O.C.G.A 11-3-309.

71.)  As provided in O.C.G.A.11-3-309. Enforcement of lost, destroyed, or stolen instrument.   (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred; (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure; and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

72.) The instrument which purports to give Defendant a legal claim is considered a security under O.C.G.A 10-5-2(31).  O.C.G.A. 10-5-2 (31) "Security" means a note; stock; treasury stock; security future; bond; debenture; evidence of indebtedness; certificate of interest or participation in a profit-sharing agreement; collateral trust certificate; pre-organization certificate or subscription; transferable share; investment contract; voting trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; put, call, straddle, option, or privilege on a security, certificate of deposit, or group or index of securities, including an interest

therein or based on the value thereof; put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency; or, in general, an interest or instrument commonly known as a "security"; or a certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase any of the foregoing.

(A) Includes both a certificated and an uncertificated security;

(B) Does not include an insurance or endowment policy or annuity contract under which an insurance company promises to pay a fixed or variable sum of money either in a lump sum or periodically for life or other specified period;

(C) Does not include an interest in a contributory or noncontributory pension or welfare plan subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001, et seq.;

(D) Includes as an investment contract an investment in a common enterprise with the expectation of profits to be derived primarily from the efforts of a person other than the investor where common enterprise means an enterprise in which the fortunes of the investor are interwoven with those of either the person offering the investment, a third party, or other investors;

(E) Includes as an investment contract, among other contracts, an interest in a limited partnership or a limited liability company and an investment in a viatical settlement or similar agreement.

73.) Defendant's agents originated and offered the Loan Documents to Plaintiff, representing the documents to be 'Loan Documents' when in fact and truth they were investment contracts created for the sole purpose of pooling, depositing and servicing between the Defendants and other third parties.  Neither the true purpose, or the nature of these transactions was ever disclosed to the Plaintiff.

74.) Specifically the instrument a 'Promissory Note' is 'characterized' as a security by the Defendant so as to side step local conveyancing laws, and intangible taxation at the state level, then the Defendant's agents, or third parties such as (MERS) Mortgage Electronic Registrations Systems conducts the transfer of a 'Promissory Note' and as such they are acting as 'broker dealers' in the State of Georgia without a license. O.C.G.A. 10-5-2(3).

75.)  Defendants have violated O.C.G.A. 10-5-2 (3) which provides certain definitions "Broker-dealer" means a person engaged in the business of effecting transactions in securities for the account of others or for the person's own account. The term does not include:        (A) An agent; (B) An issuer; (C) A bank, trust company, credit union, or savings institution if its activities as a broker-dealer are limited to those specified in subsections 3(a)(4)(B)(i) through (vi) and (viii) through (x) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78c(a)(4); subsection 3(a)(4)(B)(xi) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78c(a)(4) if limited to unsolicited transactions; or subsections 3(a)(5)(B) and 3(a)(5)(C) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78c(a)(5), or a bank that satisfies the conditions described in subsection 3(a)(4)(E) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78c(a)(4);  (D) An international banking institution; or  (E) A person excluded by rule adopted or order issued under this chapter.

76.)Plaintiff maintains that Defendant and third parties Co-Defendant (MERS) Mortgage Electronic Registration Systems are clearly operating outside of the exemption

requirements set forth in O.C.G.A. 10-5-2 (3), and therefore are required to have a
'Broker- Dealer' registration in place with the Georgia Securities Division under
O.C.G.A. 10-5-30 and have failed to properly register or comply with state statute.
O.C.G.A. 10-5-30.  Registration requirements for broker-dealers; exemptions (a) It is
unlawful for a person to transact business in this state as a broker-dealer unless the
person is registered under this chapter as a broker-dealer or is exempt from registration as
a broker-dealer under subsection (b) or (d) of this Code section. (b) The following
persons are exempt from the registration requirement of subsection (a) of this Code
section:
(1) A broker-dealer without a place of business in this state if its only transactions
effected in this state are with:
 (A) The issuer of the securities involved in the transactions;
(B) A person registered as a broker-dealer under this chapter or not required to be
registered as a broker-dealer under this chapter;
 (C) An institutional investor;
 (D) A nonaffiliated federal covered investment adviser with investments under
management in excess of $100 million acting for the account of others pursuant to
discretionary authority in a signed record;
 (E) A bona fide preexisting customer whose principal place of residence is not in this
state and the person is registered as a broker-dealer under the Securities Exchange Act of
1934, 15 U.S.C. Section 78a, et seq., or not required to be registered under the Securities
Exchange Act of 1934, 15 U.S.C. Section 78a, et seq., and is registered under the
securities act of the state in which the customer maintains a principal place of residence;
(F) A bona fide preexisting customer whose principal place of residence is in this state
but was not present in this state when the customer relationship was established, if:
 (i) The broker-dealer is registered under the Securities Exchange Act of 1934, 15 U.S.C.
Section 78a, et seq., or not required to be registered under the Securities Exchange Act of
1934, 15 U.S.C. Section 78a, et seq., and is registered under the securities laws of the
state in which the customer relationship was established and where the customer had
maintained a principal place of residence; and
 (ii) Within 45 days after the customer's first transaction in this state, the person files an
application for registration as a broker-dealer in this state and a further transaction is not
effected more than 75 days after the date on which the application is filed, or, if earlier,
the date on which the Commissioner notifies the person that the Commissioner has
denied the application for registration or has stayed the pendency of the application for
good cause;
 (G) Not more than three customers in this state during the previous 12 months, in
addition to those customers specified in subparagraphs (A) through (F) and subparagraph
(H) of this paragraph, if the broker-dealer is registered under the Securities Exchange Act
of 1934, 15 U.S.C. Section 78a, et seq., or not required to be registered under the
Securities Exchange Act of 1934, 15 U.S.C. Section 78a, et seq., and is registered under
the securities act of the state in which the broker-dealer has its principal place of
business; and
 (H) Any other person exempted by rule adopted or order issued under this chapter; and
(2) A person that deals solely in United States government securities and is supervised as
a dealer in government securities by the Board of Governors of the Federal Reserve

11

System, the Comptroller of the Currency, the Federal Deposit Insurance Corporation, or the Office of Thrift Supervision.

(c) It is unlawful for a broker-dealer or for an issuer engaged in offering, offering to purchase, purchasing, or selling securities in this state, directly or indirectly, to employ or associate with an individual to engage in an activity related to securities transactions in this state if the registration of the individual is suspended or revoked or the individual is barred from employment or association with a broker-dealer, an issuer, an investment adviser, or a federal covered investment adviser by an order of the Commissioner under this chapter, the Securities and Exchange Commission, or a self-regulatory organization. A broker-dealer or issuer does not violate this subsection if the broker-dealer or issuer did not know and in the exercise of reasonable care could not have known of the suspension, revocation, or bar. Upon request from a broker-dealer or issuer and for good cause, an order under this chapter may modify or waive, in whole or in part, the application of the prohibitions of this subsection to the broker-dealer.

(d) A rule adopted or order issued under this chapter may permit:

(1) A broker-dealer that is registered in Canada or other foreign jurisdiction and that does not have a place of business in this state to effect transactions in securities with or for or attempt to effect the purchase or sale of any securities by:

 (A) An individual from Canada or other foreign jurisdiction who is temporarily present in this state and with whom the broker-dealer had a bona fide customer relationship before the individual entered the United States;

 (B) An individual from Canada or other foreign jurisdiction who is present in this state and whose transactions are in a self-directed tax advantaged retirement plan of which the individual is the holder or contributor in that foreign jurisdiction; or

 (C) An individual who is present in this state, with whom the broker-dealer customer relationship arose while the individual was temporarily or permanently resident in Canada or the other foreign jurisdiction; and

 (2) An agent who represents a broker-dealer that is exempt under this subsection to effect transactions in securities or attempts to effect the purchase or sale of securities in this state as permitted for a broker-dealer described in paragraph (1) of this subsection.

77.)  Plaintiff maintains that the Defendants their agents and Co-Defendant (MERS) Mortgage Electronic Registration Systems failed to have the subject security registered before the sale as required by O.C.G.A. 10-5-20. Restrictions on sales of securities It is unlawful for a person to offer or sell a security in this state unless: (1) The security is a federal covered security; (2) The security, transaction, or offer is exempted from registration under Code Sections 10-5-10 through 10-5-12; or (3) The security is registered under this chapter.

78.)  Plaintiff maintains the' Promissory Note' as an instrument has been sold several times prior to the Defendant's purported receipt, as such the last holder of the instrument could  not acquire the rights of the holder in due course because the transferee's engaged in illegal and fraudulent acts that directly affect the integrity instrument O.C.G.A. 11-3-203(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire the rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

79.) Defendant came into possession of the subject 'Promissory Note' through an illegal and invalid assignment and Defendant's claims are a covert attempt to subvert and steal from Plaintiff her equitable interest in the property.

WHEREFORE, Plaintiff seeks a judgment as outlined below.

## COUNT VI
### SLANDER of TITLE
### (Against MERS, Litton Loan Servicing LLP, Americas Wholesale Lender, and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificate holders CWABS, Inc. Asset-Backed Certificates, Series 2005-08)

80.) Plaintiff re-alleges and incorporates by reference paragraphs 1-33 as though fully set forth herein.

81.) Defendants intentionally slandered the title of the true possessor of the subject property by filing an assignment document that did not vest the MERS assignee with an ownership interest in the alleged Security Deed, because MERS did not possess an ownership interest in the Security Deed to be assigned, thus the ability of any subsequent party to foreclose on a MERS assigned Security Deed is eviscerated and now defective.

82.) Plaintiff has valid title to the subject property since June 3, 2005.

83.) Plaintiff has incurred injury as a result of Defendants actions.

84.) Plaintiff has incurred monetary, economic damages and punitive damage as a result of Defendants' actions.

85.) Defendants actions and libelous words and recorded acts have maliciously impugned Plaintiffs' title.

WHEREFORE, Plaintiff prays for Judgment set forth below.

## COUNT VII
### Conventional Quiet Title
### (Against MERS, Litton Loan Servicing LLP, Americas Wholesale Lender, and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificate holders CWABS, Inc. Asset-Backed Certificates, Series 2005-08)

86.) Plaintiff re-alleges and incorporates by reference paragraphs 1-33 as though fully set forth herein.

87.) Plaintiffs affirmatively state that Defendant's actions cloud the Plaintiff's title under O.C.G.A. 23-3-42.

88.) Plaintiff has perfect title established by equitable possession and are the rightful true owner of the subject property.

89.) Plaintiff has been in continuous possession of said property since June 3, 2005 under legal and equitable title and adverse possession and has continuously maintained the property, and made repairs and additions to the property.

90.) Defendant filed an assignment that is false and fraudulent that clouds the Plaintiff's title.

91.) That Quiet Title is the effectual remedy to Plaintiff.

92.) That Plaintiff has perfected equity and Defendant's Assignment which falsely attempts to convey an interest in the subject property to another party causes a direct injury to the Plaintiff.

93.) That Plaintiff suffers a present injury by Defendant's action.

WHEREFORE, Plaintiff prays for Judgment set forth below.

## COUNT VI
## JURY TRIAL DEMAND

94.) Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury.

## COUNT XIII
## PRAYER FOR RELIEF

WHEREFORE, as a result of the actions of Defendants and Defendant's attorneys and agents who processed ratified, and serviced this non-judicial foreclosure transaction, yet utterly failed to provide proper statutory Notice of Default, and proper Notice of Non-judicial foreclosure Sale, and failed to properly comply with substantive laws regarding non-judicial foreclosure sales in the state of Georgia. (see OCGA § 23-2-114); Plaintiff prays for judgment against Defendants as follows:

1) Award the value of the security interest in Plaintiffs' property created under the transaction.

2) Return of any and all monies or property given by Plaintiff to anyone, including the Defendants, in connection with this transaction, with interest at the statutory rate.

3) Statutory damages;

4) Award Plaintiff actual damages, and restitution;

5) Award Plaintiff reasonable attorney fees and costs of suit;

6) That Defendants be ordered to pay punitive damages under O.C.G.A. § 51-12-5.1 to punish and deter their predatory practices in the future.

7) Actual damages for loss of personal property, relocation expenses, replacement housing, and compensatory damages sustained by Plaintiff in excess of the jurisdictional limits in an exact amount to be proven at trial.

8) Award Plaintiffs such other and further relief as the Court may deem just.

14

Respectfully submitted, this 14th day of July, 2011.

Dale A. Calomeni, Attorney at law
Calomeni & Associates, LLC
Georgia Bar No: 105311
PO Box 2358
ROSWELL, GA 30075
Direct: (770) 597-6111
Off: (770) 597-6112
Fax: 678-597-4955

Dacalomeni1@bellsouth.net

Office address: 1455 Old Alabama Road, Suite 195-B, Roswell, GA 30076

```
DOC# 010873
FILED IN OFFICE
06/16/2005   08:49 AM
BK:1933  PG:218-219
LINDA D HAYS
CLERK OF SUPERIOR COURT
NEWTON COUNTY
```
*Linda D. Hays*
```
REAL ESTATE TRANSFER TAX
PAID: $449.50
```

Return Document To:
T. Smith Law Group, P.C.
2008 Eastview Parkway
Suite 200
Conyers, GA 30013
File No. 05-0111

## WARRANTY DEED

STATE OF GEORGIA

COUNTY OF ROCKDALE

THIS INDENTURE, made the 3rd day of June, in the year Five (2005), between **Robert D. McDermott** of the County of Newton, State of Georgia, as party or parties of the first part, hereinafter called Grantor, and **Chunta Warthen**, of the County of Newton County, State of Georgia, as party or parties of the second part, hereinafter called Grantee (the words, "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that: Grantor, for and in consideration of the sum of Ten and NO/100——————————($10.00) and other good and valuable consideration in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

All that tract or parcel of land, with house and all other improvements located thereon, lying and being in Land Lot 139 of the 10th District of Newton County, Georgia, being Lot 70 of Lyndhurst Subdivision, Unit Two as shown on plat of Lyndhurst Subdivision-Unit Two as same is recorded in Plat Book 35, page 60, Newton County Records.  The description of said property as contained on said plat is hereby incorporated herein and made an essential part hereof by reference.

This conveyance is made subject to the following:

1.     State and county ad valorem real property taxes and assessments for 2005not yet due and payable and subsequent years.

2.     Any and all easements and restrictions of record.

BK:1933  PG:219

3.      Declaration of Protective Covenants as recorded in Deed Book 988, page 233, Newton County Records.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only property use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered this
In the presence of:

_____
Witness

_____
Notary Public
My Commission Expires:

_____(Seal)
Robert D. McDermott

_____(Seal)

SEAL AFFIXED

DOC# 010874
FILED IN OFFICE
06/16/2005   08:49 AM
BK:1933  PG:220-239
LINDA D HAYS
CLERK OF SUPERIOR COURT
GEORGIA INTANGIBLE
TAX PAID
$1348.50
DATE 6/16/2005

_Linda D. Hays_
CLERK OF SUPERIOR COURT
NEWTON COUNTY

After Recording Return To:
JANE DOCMAN
MS SV-79 DOCUMENT PROCESS
P.O.Box 10423
Van Nuys, CA 91410-0423

Return after recording to:
T Smith Law Group, P.C.
2008 Eastview Parkway, Suite 200
Conyers, GA 30013

Prepared By:
BLANCA DEMADURA

05-0111

[Space Above This Line For Recording Data]

CHUNTA WARTHEN                    0001041164230600 5
[Escrow/Closing #]                    [Doc ID #]

# SECURITY DEED

MIN 1000157-0005229058-8

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated  JUNE 03, 2005        , together
with all Riders to this document.
(B) "Borrower" is
CHUNTA WARTHEN

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
AMERICA'S WHOLESALE LENDER

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 11                              Initials: C.W

-6A(GA) (0005).01   CHL (08/02)(d)  VMP MORTGAGE FORMS - (800)521-7291               Form 3011 1/01
CONV/VA


EXHIBIT B

BK:1933   PG:221

DOC ID #: 00010411642306005

Lender is a CORPORATION
organized and existing under the laws of NEW YORK                                    . Lender's address is
P.O. Box 660694, Dallas, TX 75266-0694                                               .
(E) "Note" means the promissory note signed by Borrower and dated  JUNE 03, 2005            . The
Note states that Borrower owes Lender
FOUR HUNDRED FORTY NINE THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 449,500.00          ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  JUNE 01, 2035           .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

                                                                    Waiver of Borrower's Rights
                                                                    and Closing Attorney's Affidavit
(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)
conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or
any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not
that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and
modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely
as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with
power of sale, the following described property located in the

            COUNTY                    of                    NEWTON                      :
      [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Initials: a w

BK:1933  PG:222

DOC ID #: 00010411642306005

Parcel ID Number: GHO3587832                which currently has the address of

35 FOXGLOVE DR, COVINGTON
[Street/City]

Georgia 30016-6700 ("Property Address"):
[Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns, and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

BK:1933  PG:223

DOC ID #: 00010411642306005

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to it's condition. Unless it is determined pursuant to

Initials: O.W

BK:1933  PG:225

DOC ID #: 0001041164230600 5

Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

BK:1933  PG:226

DOC ID #: 00010411642306005

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

BK:1933   PG:227

DOC ID #: 00010411642306005

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

Initials: C.W

BK=1933  PG=228
DOC ID #: 0001041164 2306005

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

BK:1933   PG:229

DOC ID #: 00010411642306005

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BK:1933  PG:230

DOC ID #: 00010411642306005

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)
CHUNTA MARTHEN                         -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

**STATE OF GEORGIA,**                              County ss:
    Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
                                              County

SEAL AFFIXED

EXHIBIT "A"     BK:1933   PG:231

All that tract or parcel of land, with house and all other improvements located thereon, lying and being in Land Lot 139 of the 10th District of Newton County, Georgia, being Lot 70 of Lyndhurst Subdivision, Unit Two as shown on plat of Lyndhurst Subdivision-Unit Two as same is recorded in Plat Book 35, page 60, Newton County Records.   The description of said property as contained on said plat is hereby incorporated herein and made an essential part hereof by reference.

BK:1933  PG:232

———————————[Space Above This Line For Recording Data]———————————

## INTEREST ONLY ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

After Recording Return To:
JANE DOCMAN
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
BLANCA DEMADURA


CHUNTA WARTHEN                  104116423
[Escrow/Closing #]              [Loan #]

THIS INTEREST ONLY ADJUSTABLE RATE RIDER is made this THIRD                day of
JUNE, 2005      , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
35 FOXGLOVE DR
COVINGTON, GA 30016-6700
[Property Address]


**MULTISTATE INTEREST ONLY ADJUSTABLE RATE RIDER - LIBOR INDEX**
● BC - Interest Only ARM Rider                          Initials: C.W
2E121-XX (02/04)(d)                 Page 1 of 3





BK:1933 PG:233

LOAN #: 104116423

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 8.170 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of JUNE, 2008, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding EIGHT & 17/100 percentage point(s) ( 8.170 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.670 % or less than 8.170 %. Thereafter, my interest rate will never be increased or decreased on any Change Date by more than single ONE & ONE-HALF percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 15.170 % or less than 8.170 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on the Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

Initials: C.W

BK:1933  PG:234

LOAN #: 104116423

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Adjustable Rate Rider.

_____ (Seal)
CHUNTA WARTHEN                                        - Borrower

_____ (Seal)
                                                      - Borrower

_____ (Seal)
                                                      - Borrower

_____ (Seal)
                                                      - Borrower

● BC - Interest Only ARM Rider
2E121-XX (02/04)                        Page 3 of 3

```
DOC# 009738
FILED IN OFFICE
09/23/2009  09:54 AM
BK:2757  PG:353-353
LINDA D. HAYS
CLERK OF SUPERIOR COURT
NEWTON COUNTY
```

Our File No.: 52636709-FT1
Debtor: Chunta Warthen
Sale Date: 11/03/2009

Return to
Prommis Solutions, LLC
1544 Old Alabama Road
Roswell, GA 30076

## ASSIGNMENT

STATE OF **Texas**

COUNTY OF **Harris**

For value received, Mortgage Electronic Registration Systems, Inc has this day transferred, sold, assigned, conveyed and set over to The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-08, whose address is 4828 Loop Central Drive, Houston, TX 77081, as Assignee, its successors, representatives and assigns, all its right, title and interest in and to a certain Security Deed (or Deed to Secure Debt) executed by Chunta Warthen to Mortgage Electronic Registration Systems, Inc., dated June 3, 2005, recorded in Deed Book 1933, Page 220, Newton County, Georgia Records.

Property Address: 35 Foxglove Dr, Covington, GA 30016-6700

The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Security Deed, the property described therein, the indebtedness secured thereby together with all the powers, options, privileges and immunities therein contained.

The Assignor herein has this day sold and assigned to the Assignee herein the note secured by the aforesaid Security Deed and this transfer is made to secure the Assignee, its successors, representatives and assigns, in the payment of said note.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and seal this 9·10·09

Signed, sealed and delivered
in the presence of:

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC

Unofficial Witness _Norman Francisco_

By: _____
Printed Name: Marti Noriega
Title: Assistant Vice President

Notary Public
My Commission Expires: 7-26-2010

By: _____
Printed Name: Denise Bailey
Title: Assistant Secretary
(Corporate Seal)

KAREN QUILLER
Notary Public, State of Texas
My Commission Expires 07-26-2010

**SEAL AFFIXED**

EXHIBIT C



## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

CHUNTA WARTHEN,
PLAINTIFF

Vs.                                              **CIVIL ACTION**
                                        **FILE NO: 2011 - CV - 203253**

LITTON LOAN SERVICING LP;
AMERICA'S WHOLESALE LENDER;
COUNTRYWIDE HOME LOANS INC;
MORTGAGE ELECTRONIC REGISTRATION
SYESTEMS;
THEBANK OF NEW YORK MELLON f/k/a THE
BANK OF NEW YORK as TRUSTEE for the
CERTIFICATEHOLDERS CWABS, INC.
ASSET –BACKED CERTIFICATES, SERIES
2005-08 and
JOHN DOE attorneys for The Bank of Mellon,
DEFENDANTS.
                                                              /

### SUMMONS

**TO THE ABOVE NAMED DEFENDANT(S):**

You are hereby summoned and required to file with the Clerk of the Said Court and serve
upon the Plaintiff's attorney, whose name and address is:

> DALE A. CALOMENI           PH: 770-597-6112
> ATTORNEY AT LAW            FAX: 678-597-4955
> PO BOX 2358 ,              dacalomeni1@bellsouth.com
> ROSWELL, GA, 30075
> GA BAR NO: 105311

ANSWER to the complaint which is herewith served upon you, within 30 days after service
of this Summons upon you, exclusive of the day of service. If you fail to do s, judgment by
default will be taken against you for the relief demanded in the Complaint.

This   15TH   day of July, 2011.

                    CLERK OF THE FULTON COUNTY SUPERIOR COURT

          BY: _____

                              DEPUTY CLERK

INSTRUCTIONS: ATTACH ADDENDUM SHEET FOR ADDITIONAL PARTIES IF NEEDED, MAKE NOTATION ON THIS SHEET IF
ADDENDUM SHEET IS USED.
COC SC – 1 REVISED 12-99



# Affidavit of Process Server

FILED IN OFF
AUG 08 20
DEPUTY CLERK SUPERIO
FULTON COUNTY

_Fulton Superior Court_
(NAME OF COURT)

_Chunta Warthen_    vs    _Litton Loan Servicing LP_     2011-CV-203253
PLAINTIFF/PETITIONER          DEFENDANT/RESPONDENT          CASE NUMBER

I _Chris Stanton_, being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

**Service:** I served _Litton Loan Servicing LP_
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) _Summons & Complaint and Exhibit A-C_

by leaving with _Alisha Smith, Agent for CSC_                At
NAME                          RELATIONSHIP

☐ Residence_____
ADDRESS                    CITY / STATE

☒ Business _C.S.C. Registered Agent for defendant, 40 Technology Pkwy, Nort_
ADDRESS                              CITY / STATE

On _7/18/11_          AT _4:05 pm_
DATE                   TIME

☐ Inquired if subject was a member of the U.S. Military and was informed they are not.

Thereafter copies of the documents were mailed by prepaid, first class mail on_____
DATE

from_____
CITY              STATE              ZIP

**Manner of Service:**
☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.
☒ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Cancelled by Litigant   ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist   ☐ Other_____

**Service Attempts:** Service was attempted on: (1)_____ _____ (2)_____ _____
DATE     TIME          DATE     TIME

(3)_____ _____ (4)_____ _____ (5)_____ _____
DATE     TIME          DATE     TIME          DATE     TIME

**Description:** Age_____ Sex_____ Race_____ Height_____ Weight_____ Hair_____ Beard_____ Glasses_____

_____
SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this _21_ day of _July_, 20_11_, by _Chris Stanton_
Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of_____

NICHOLAS MA
COMMISSION EXPIRES
NOTARY PUBLIC
OCTOBER 7, 2014
DEKALB COUNTY, GEORGIA

FORM 2          NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS
NAPPS



# AFFIDAVIT OF SERVICE

**State of Georgia**              **County of Fulton**                          **Superior Cou**

Case Number: 2011-CV-203253

Plaintiff:
**Chunta Warthen**

vs.

Defendant:
**Litton Loan Servicing, LP; et al.**



Received by Chameleon Investigations, Inc. on the 25th day of July, 2011 at 1:27 pm to be served on **Mortgage Electronic Registration Systems, Inc., 1818 Library Street, Suite 300, Reston, VA 20190.**

I, Anthony J. Stefano, being duly sworn, depose and say that on the **26th day of July, 2011 at 10:14 am, I:**

served a **CORPORATION** by delivering a true copy of the **SUMMONS and VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF WITH EXHIBITS** to: **Andrew Marmion as Counsel** for **Mortgage Electronic Registration Systems, Inc.** at the address of: **1818 Library Street, Suite 300, Reston, VA 20190**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served:  Age: 30s,  Sex: M,  Race/Skin Color: White,  Height: 5'10",  Weight: 140,  Hair: Brown,  Glasses: Y

I certify that I am a United States citizen, over the age of 18 and not a party to, nor otherwise interested in the above action.



Subscribed and Sworn to before me on the 26th day of July, 2011 by the affiant who is personally known to me.

NOTARY PUBLIC

My Commission Expires:

Anthony J. Stefano
Process Server

**Chameleon Investigations, Inc.**
**1327 Arkwright Place**
**Atlanta, GA 30317**
**(404) 784-6009**

Our Job Serial Number: FFA-2011002957